Daniel Sadeh, Esq.
**HALPER SADEH LLP**
375 Park Avenue, Suite 2607
New York, NY 10152
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ERIC WOLFE, | Case No: |
| Plaintiff, | |
| v. | JURY TRIAL DEMANDED |
| STEMLINE THERAPEUTICS, INC. RON BENTSUR, IVAN BERGSTEIN, DARREN CLINE, ALAN FORMAN, DANIEL HUME, MARK SARD, and KENNETH ZUERBLIS, | |
| Defendants. | |

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

Plaintiff Eric Wolfe ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

**NATURE OF THE ACTION**

1. This is an action against Stemline Therapeutics, Inc. ("Stemline" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(e), 14(d)(4), and 20(a) of the Securities Exchange Act of 1934 (the

"Exchange Act"), 15 U.S.C. §§ 78n(e), 78n(d)(4), and 78t(a), and Rule 14d-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14d-9, in connection with the proposed acquisition (the "Proposed Transaction") of Stemline by Mercury Merger Sub, Inc. ("Merger Sub"), a wholly owned subsidiary of Berlin-Chemie AG ("Parent"), and an indirect wholly owned subsidiary of A. Menarini-Industrie Farmaceutiche Riunite-S.r.l. ("Menarini," and together with its subsidiaries, the "Menarini Group").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 14(e), 14(d)(4), and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(e), 78n(d)(4), and 78t(a)) and Rule 14d-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14d-9).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, the alleged misstatements entered and the subsequent damages occurred in this District, and the Company conducts business in New York.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff is, and has been at all relevant times hereto, an owner of Stemline common stock.

7. Defendant Stemline is a commercial-stage biopharmaceutical company that focuses on the discovery, acquisition, development, and commercialization of oncology therapeutics in the United States and Europe. The Company is incorporated in Delaware with principal executive offices located in New York, New York. The Company's common stock trades on the NASDAQ Capital Market ("NASDAQ") under the ticker symbol, "STML."

8. Defendant Ron Bentsur ("Bentsur") is a director of the Company.

9. Defendant Ivan Bergstein ("Bergstein") is the Chief Executive Officer ("CEO") and a director of the Company.

10. Defendant Darren Cline ("Cline") is a director of the Company.

11. Defendant Alan Forman ("Forman") is a director of the Company.

12. Defendant Daniel Hume ("Hume") is a director of the Company.

13. Defendant Mark Sard ("Sard") is a director of the Company.

14. Defendant Kenneth Zuerblis ("Zuerblis") is a director of the Company.

15. Defendants Bentsur, Bergstein, Cline, Forman, Hume, Sard and Zuerblis are collectively referred to herein as the "Individual Defendants."

16. Defendants Stemline and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. Background of the Company and the Proposed Transaction

17. According to the Solicitation Statement (defined below), on March 3, 2020, Defendant "Bergstein received a call from the Chief Executive Officer of Party A, during which Party A indicated that it was interested in a possible stock-for-stock combination with Stemline."

18. On March 13, 2020, Stemline issued a press release announcing its fourth quarter

3

2019 financial results. Stemline's Chief Commercial Officer and Defendant Bergstein touted Stemline's future growth and prospects, stating, in pertinent part:

> Robert Francomano, Chief Commercial Officer of Stemline, stated, "Overall, we are very pleased with the solid demand we generated for ELZONRIS in the first year of launch and look to expand our reach in the market as we continue to build a strong commercial foundation. Importantly, new medical claims data align with our independent analyses which support our market size estimates of the BPDCN U.S. patient population. We believe there is significant growth potential ahead and are poised to capture greater market penetration. Based on market assessments, we have already started to implement a new host of tactics to better situate ELZONRIS in this dynamic and emerging market – all of which should benefit growth later this year."
>
> Ivan Bergstein, CEO of Stemline, commented, "Our first year of launch has created a strong foundation for the future growth of the company. We are investing in multiple label expansion opportunities for ELZONRIS in such indications as CMML, MF, and AML, as well as advancing our other pipeline products including felezonexor, our XPO1 inhibitor and SL-1001, our RET kinase inhibitor, toward key inflection points over the coming year and beyond."

19. According to the Solicitation Statement, on April 5, 2020, Defendant Bergstein "received an email from Party A indicating that Party A remained interested in a potential transaction involving Stemline and that its financial advisors had begun working on evaluating a transaction between the companies."

20. On April 12, 2020, Defendant Bergstein had a call with the CEO of Party A to inform Party A that Stemline was considering other opportunities and that he would be unable to join a call scheduled for April 14, 2020. During this discussion, the CEO of Party A, "asked Dr. Bergstein whether Stemline would be entering into an agreement to be acquired and suggested that Party A could potentially be interested in acquiring Stemline, but would need more time to prepare a proposal."

21. Later that day, Defendant "Bergstein and [Stemline's Chief Operating Officer] had another call with the Chief Executive Officer of Party A and informed Party A that Stemline would

be entering into an exclusivity agreement with another party and could no longer communicate."

22. On May 4, 2020, Menarini Group and Stemline issued a press release announcing that they had entered into a definitive agreement under which Menarini Group would acquire Stemline in a transaction valued up to $677 million. Under the terms of the agreement, a wholly-owned subsidiary of the Menarini Group would commence a tender offer for all outstanding shares of Stemline, whereby Stemline shareholders would be offered a total potential consideration of $12.50 per share, consisting of an upfront payment of $11.50 in cash and one non-tradeable Contingent Value Right ("CVR") that would entitle each holder to an additional $1.00 in cash per share upon completion of the first sale of ELZONRIS in any EU5 country after European Commission approval. The press release states, in pertinent part:

**Menarini Group to Acquire Stemline Therapeutics in Transaction Valued at Up to $677 Million**

May 04, 2020 07:00 ET | **Source:** Stemline Therapeutics, Inc.

- *Acquisition of Stemline establishes Menarini's presence in the U.S. biopharmaceutical oncology market*

- *Menarini will support further development of Stemline's ELZONRIS® and enable global expansion by leveraging its commercial infrastructure in Europe and other ex-U.S. geographies*

- *Total potential consideration of $12.50 per share comprising $11.50 cash and $1.00 Contingent Value Right (CVR)*

FLORENCE, Italy and NEW YORK, May 04, 2020 (GLOBE NEWSWIRE) -- Menarini Group, a privately held Italian pharmaceutical and diagnostics company, and Stemline Therapeutics Inc., a commercial-stage biopharmaceutical company focused on the development and commercialization of novel oncology therapeutics, (Nasdaq: STML) today announced a definitive agreement under which Menarini Group will acquire Stemline in a transaction valued up to $677 million.

Under the terms of the agreement, a wholly owned subsidiary of the Menarini Group will commence a tender offer for all outstanding shares of Stemline, whereby Stemline shareholders will be offered a total potential consideration of $12.50 per share, consisting of an upfront payment of $11.50 in cash and one non-tradeable

5

Contingent Value Right (CVR) that will entitle each holder to an additional $1.00 in cash per share upon completion of the first sale of ELZONRIS in any EU5 country after European Commission approval. Stemline launched ELZONRIS for the treatment of blastic plasmacytoid dendritic cell neoplasm (BPDCN) in adult and pediatric patients, two years or older, following the approval by the United States Food and Drug Administration in December 2018. ELZONRIS is a novel targeted therapy directed to the interleukin-3 (IL-3) receptor-α (CD123).

With the support of Menarini's infrastructure, Stemline will continue its efforts to develop additional applications of ELZONRIS to serve the unmet needs of patients suffering from difficult to treat diseases and cancers. Following its strong U.S. launch of ELZONRIS, Stemline will benefit from Menarini's experience in bringing products to markets in Europe and emerging markets as it prepares for a successful international launch upon receipt of regulatory approval in ex-U.S. territories.

Elcin Barker Ergun, CEO of Menarini Group, commented, "Stemline is an excellent fit for Menarini, enabling us to expand our presence in the U.S. with an established biopharmaceutical company focused on developing oncology therapeutics. Through this acquisition, we will continue to strengthen our portfolio and pipeline of oncology assets and deliver novel therapies around the world. We look forward to uniting together with the Stemline team to advance our shared mission of serving patients."

Ivan Bergstein, M.D., Chairman, CEO and Founder of Stemline, said, "Joining Menarini represents a unique opportunity for Stemline to advance the commercialization of ELZONRIS across the globe and to accelerate the development of our pipeline of oncology assets. We have transitioned Stemline over the last several years into an established commercial-stage operation with a novel treatment, a growing pipeline and a strong foundation. We are excited to be combining with a like-minded organization in Menarini, in a transaction that will deliver immediate and significant cash value to our shareholders, while also allowing our shareholders to participate in the future upside of ELZONRIS's European launch. We look forward to working closely together on our unified goal of helping and delivering hope to patients worldwide."

**Transaction Terms**

Under the terms of the agreement, a wholly owned subsidiary of the Menarini Group will commence a tender offer for all outstanding shares of Stemline, whereby Stemline shareholders will be offered a total potential consideration of $12.50 per share, consisting of an upfront payment of $11.50 per share in cash, along with one non-tradeable Contingent Value Right (CVR).

Under the terms of the non-tradeable CVR, Stemline shareholders will be paid an additional $1.00 per share upon completion of the first sale for use or consumption

by the general public of ELZONRIS in BPDCN in any one of the following countries: United Kingdom, France, Spain, Germany, or Italy after receiving approval by the European Commission of a Marketing Authorization Application (MAA), through the centralized procedure, on or before December 31, 2021. There can be no assurance such approval or commercialization will occur or that any contingent payment will be made.

Menarini will acquire any shares of Stemline not tendered into the tender offer through a second-step merger for the same per share consideration as will be payable in the tender offer. The merger will be effected as soon as practicable after the closing of the tender offer.

The transaction has been unanimously approved by the Boards of Directors of both companies. Stemline's Board of Directors recommends to shareholders of Stemline that they tender their shares into the tender offer. The transaction is expected to close in the second quarter of 2020, subject to customary closing conditions, including the tender of more than 50% of all shares of Stemline outstanding at the expiration of the offer and receipt of Hart-Scott-Rodino clearance. The terms and conditions of the tender offer will be described in the tender offer documents, which will be filed with the U.S. Securities and Exchange Commission.

Menarini expects to fund the acquisition through existing cash resources.

**Advisors**

Goldman Sachs International is acting as exclusive financial advisor and Fried, Frank, Harris, Shriver & Jacobson LLP is acting as legal advisor to Menarini. PJT Partners and BofA Securities are acting as financial advisors and Skadden, Arps, Slate, Meagher & Flom LLP and Alston & Bird LLP are acting as legal advisors to Stemline.

**About ELZONRIS®**

ELZONRIS® (tagraxofusp), a targeted therapy directed to CD123, is approved by the U.S. Food and Drug Administration (FDA) and commercially available in the U.S. for the treatment of adult and pediatric patients, two years or older, with BPDCN. For full prescribing information in the U.S., visit **www.ELZONRIS.com**. In Europe, a marketing authorization application (MAA) is under review by the European Medicines Agency (EMA).

**About BPDCN**

BPDCN, formerly blastic NK-cell lymphoma, is an aggressive hematologic malignancy, often with cutaneous manifestations, with historically poor outcomes. BPDCN typically presents in the bone marrow and/or skin and may also involve lymph nodes and viscera. The BPDCN cell of origin is the plasmacytoid dendritic

cell (pDC) precursor. The diagnosis of BPDCN is based on the immunophenotypic diagnostic triad of CD123, CD4, and CD56, as well as other markers. The World Health Organization (WHO) termed this disease "BPDCN" in 2008; previous names included blastic NK cell lymphoma and agranular CD4+/CD56+ hematodermic neoplasm. For more information, please visit the BPDCN disease awareness website at **www.bpdcninfo.com**.

**About Stemline**

Stemline Therapeutics, Inc. is a commercial-stage biopharmaceutical company focused on the development and commercialization of novel oncology therapeutics. ELZONRIS® (tagraxofusp), a targeted therapy directed to CD123, is FDA-approved and commercially available in the U.S. for the treatment of adult and pediatric patients, two years and older, with BPDCN. It is the only FDA-approved therapy for BPDCN in the U.S. In Europe, a marketing authorization application (MAA) is under review by the European Medicines Agency (EMA). ELZONRIS is also being evaluated in clinical trials in additional indications including chronic myelomonocytic leukemia (CMML), myelofibrosis (MF), acute myeloid leukemia (AML), and additional trials and indications are planned. For more information, please visit the company's website at **www.stemline.com**.

**About Menarini**

The Menarini Group is a leading international pharmaceutical company with a presence in over 100 countries, including a direct presence in over 70 countries. Its global platform extends throughout Europe, Central America, Africa, the Middle East and Asia and generates over $4.2 billion in annual sales. For over 125 years, Menarini has been investing in the development and commercial distribution of pharmaceuticals to serve patients and physicians around the world with a full portfolio of products in the cardiovascular, gastroenterology, metabolic, infectious diseases and anti-inflammatory/analgesic therapeutic areas. Menarini is also committed to oncology, with several new investigational drugs in development for the treatment of a variety of tumors.

23. By entering into the Proposed Transaction for all-cash and effectively eliminating Party A from the sales process, including the potential for a "possible stock-for-stock combination [between Party A and] Stemline," Stemline shareholders are unable to take part in the future growth and prospects of the Company.

24. On May 12, 2020, Stemline filed a Schedule 14D-9 Solicitation/Recommendation Statement under Section 14(d)(4) of the Exchange Act (the "Solicitation Statement") with the SEC

### B. The Solicitation Statement Contains Materially False and Misleading Statements and Omissions

25. The Solicitation Statement, which recommends that Stemline shareholders tender their shares to Merger Sub in connection with the Proposed Transaction, omits and/or misrepresents material information concerning: (i) the Company's financial projections; (ii) the financial analyses performed by Stemline's financial advisors, PJT Partners LP ("PJT Partners") and BofA Securities, Inc. ("BofA"), in connection with their fairness opinions; and (iii) potential conflicts of interest involving the Company's financial advisors.

26. The omission of the material information (referenced below) renders the following sections of the Solicitation Statement false and misleading, among others: (i) Certain Financial Projections; (ii) Reasons for the Recommendation; and (iii) Opinions of Stemline's Financial Advisors.

27. The tender offer in connection with the Proposed Transaction is set to expire one minute after 11:59 p.m., Eastern Time, on June 9, 2020 (the "Expiration Date"). It is imperative that the material information that was omitted from the Solicitation Statement be disclosed to the Company's shareholders prior to the Expiration Date to enable them to make an informed decision as to whether to tender their shares. Plaintiff may seek to enjoin Defendants from closing the tender offer or the Proposed Transaction unless and until the material misstatements and omissions (referenced below) are remedied. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

#### 1. Material Omissions Concerning Stemline's Financial Projections

28. The Solicitation Statement omits material information concerning Stemline's financial projections.

29. The Solicitation Statement provides that Stemline management prepared financial projections for Stemline for fiscal years 2020 through 2031 taking into account "risk and probability adjustments reflecting Stemline management's good faith assessment as to the probability of success for Stemline's product candidates and pipeline programs."

30. The Solicitation Statement, however, fails to disclose the unadjusted projections (without adjusting for risk) so shareholders can properly assess and determine the financial impact that the Company's risk-adjustments had on the projections.

31. The disclosure of this information is material because it would provide Stemline shareholders with a basis to project the future financial performance of the Company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisors in support of their fairness opinions. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisors, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinions in determining whether to tender their shares in connection with the Proposed Transaction.

32. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Stemline shareholders.

### 2. Material Omissions Concerning the Financial Advisors' Analyses

33. In connection with the Proposed Transaction, the Solicitation Statement omits material information concerning analyses performed by PJT Partners and BofA.

34. The Solicitation Statement fails to disclose the following concerning PJT Partners' "*Selected Comparable Company Analysis*": (1) the total enterprise value of each selected

company; (2) the rationale as to why each company was selected as comparable;[1] and (3) the rationale as to why PJT Partners disregarded companies which BofA Securities found comparable, including Blueprint Medicines Corp., Agios Pharmaceuticals, Inc., Epizyme, Inc., and MacroGenics, Inc.

35. The Solicitation Statement fails to disclose the following concerning BofA's "*Selected Publicly Traded Companies Analysis*": (1) the total enterprise value of each selected company; and (2) the rationale as to why each company was selected as comparable.

36. This material information should be disclosed in order to, among other things, inform Stemline shareholders whether PJT Partners and BofA relied on reasonably comparable companies or selectively chose companies which were not comparable to Stemline in order to make the merger consideration appear more favorable.

37. The Solicitation Statement fails to disclose the total enterprise values, individual multiples, and financial metrics of each transaction selected by PJT Partners and BofA in their respective "*Selected Precedent Merger Analysis*" and "*Selected Precedent Transactions Analysis*."

38. This material information should be disclosed in order to, among other things, inform Stemline shareholders whether PJT Partners and BofA relied on reasonably comparable precedent transactions or selectively chose transactions which were not comparable to Stemline in order to make the merger consideration appear more favorable. This information is particularly material because PJT Partners believed that a purely quantitative selected precedent transaction analysis "would not be particularly meaningful" and therefore made qualitative judgements

---

[1] PJT Partners selected Karyopharm Therapeutics in its analysis despite excluding its May 1, 2020 multiple data "because of an early March 2020 release of results from the Phase 3 BOSTON study and an early April 2020 report that Selinexor would be evaluated as a potential treatment for COVID-19 patients." Thus, the Company's shareholders are entitled to know why, specifically, Karyopharm was included in the analysis in the first instance.

11

concerning differences between the characteristics of the selected transactions and the Proposed Transaction in light of differences in financial, economic, and market conditions that existed at the relevant times.[2]

39. The Solicitation Statement fails to disclose the following concerning PJT Partners' "*Discounted Cash Flow Analysis*:" (1) the weighted average cost of capital of Stemline as of February 21, 2020 (pre-COVID-19) and May 1, 2020 (post-COVID-19); (2) the individual inputs and assumptions underlying the after-tax discount rates of 12% to 14%; and (3) the number of fully diluted Shares outstanding as of April 30, 2020.

40. The Solicitation Statement fails to disclose the following concerning BofA's "*Discounted Cash Flow Analysis*:" (1) the weighted average cost of capital of Stemline; (2) the individual inputs and assumptions underlying the discount rates ranging from 9% to 12%; and (3) Stemline's estimated cash.

41. With respect to PJT Partners' analysis of Wall Street research analysts' stock price targets for Stemline stock, the Solicitation Statement fails to disclose: (1) the individual price targets for Stemline observed by PJT Partners in its analysis, including the "discard[ed] . . . high and low research analyst estimates"; (2) the sources of those price targets; and (3) the underlying

---

[2] More specifically, PJT Partners stated the following concerning its selected precedent analysis:

> In addition, the selected precedent transactions occurred during periods in which financial, economic and market conditions were different from those in existence as of the date of PJT Partners' opinion. Accordingly, PJT Partners believed, and discussed with the Stemline Board, that a purely quantitative selected precedent transaction analysis would not be particularly meaningful in the context of considering the Transactions. PJT Partners therefore made qualitative judgments concerning differences between the characteristics of the selected precedent transactions and the Transactions which would affect the acquisition equity values of the selected target companies and Stemline.

Solicitation Statement at 39.

rationale for selecting a cost of equity of 13%.

42. With respect to BofA's analysis of equity research analyst price targets for Stemline stock available as of May 1, 2020, the Solicitation Statement fails to disclose: (1) the individual price targets observed by BofA in its analysis, including the "exclude[ed] . . . high[] and low[] analyst price targets"; (2) the sources of those price targets; and (3) the underlying rationale for selecting a discount rate of 10.5%

43. With respect to BofA's review of premiums paid in certain precedent biopharma transactions, the Solicitation Statement fails to disclose each transaction reviewed by BofA and the premiums paid therein.

44. The valuation methods, underlying assumptions, and key inputs used by PJT Partners and BofA in rendering their purported fairness opinions must be fairly disclosed to Stemline shareholders. The description of Stemline's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, Stemline shareholders are unable to fully understand the fairness opinions and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to tender their shares in connection with the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to Stemline shareholders.

### 3. Material Omissions Concerning Potential Conflicts of Interest Involving the Financial Advisors

45. The Solicitation Statement omits material information concerning potential conflicts of interest involving PJT Partners and BofA.

46. The Solicitation Statement provides that PJT Partners is due approximately $10.1 million in fees for its services to Stemline as financial advisor in connection with the Proposed

13

Transaction. As part of that compensation, PJT Partners expects "additional compensation upon the closing of the Transactions which is based upon a formula" and "additional compensation upon payment of the Milestone Payment, if any, which is based upon a formula[.]"

47. The Solicitation Statement, however, fails to disclose the details of the formulas that will determine the amount of compensation PJT Partners is expected to receive in connection with the Proposed Transaction.

48. The Solicitation Statement states that BofA and its affiliates derived aggregate revenues of less than $1 million from Stemline and certain of its affiliates for investment and corporate banking services for work performed from April 1, 2018 through March 31, 2020. The Solicitation Statement also states that BofA and its affiliates derived aggregate revenues of less than $1 million from Parent, Menarini and certain of their affiliates for investment and corporate banking services for work performed from April 1, 2018 through March 31, 2020.

49. The Solicitation Statement, however, fails to disclose the services BofA performed and compensation it received or expects to receive for work performed through May 3, 2020, the date of BofA's written fairness opinion.

50. Disclosure of a financial advisor's compensation and potential conflicts of interest to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives and the rendering of any fairness opinions. Disclosure of a financial advisor's potential conflicts of interest may inform shareholders on how much weight to place on that analysis.

51. The omission of the above-referenced information renders the Solicitation Statement materially incomplete and misleading. This information, if disclosed, would significantly alter the total mix of information available to Stemline shareholders.

## COUNT I
### For Violations of Section 14(e) of the Exchange Act
### Against All Defendants

52. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

53. Section 14(e) of the Exchange Act states, in relevant part:

> It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . . in connection with any tender offer or request or invitation for tenders[.]

54. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Solicitation Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(e) of the Exchange Act.

55. Each of the Individual Defendants, by virtue of their positions within the Company as officers and/or directors, were aware of materially false and/or misleading and/or omitted information but failed to disclose such information, in violation of Section 14(e) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Solicitation Statement with respect to the Proposed Transaction.

56. The false and misleading statements and omissions in the Solicitation Statement are material in that a reasonable shareholder would consider them important in deciding whether to tender their shares in connection with the Proposed Transaction.

57. Defendants acted knowingly or with deliberate recklessness in filing or causing the filing of the materially false and misleading Solicitation Statement.

58. By reason of the foregoing, Defendants violated Section 14(e) of the Exchange Act.

59. Because of the false and misleading statements in the Solicitation Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### For Violations of Section 14(d)(4) of the Exchange Act and Rule 14d-9 Promulgated Thereunder
### Against All Defendants

60. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

61. Defendants caused the Solicitation Statement to be issued with the intent to solicit shareholder support for the Proposed Transaction.

62. Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers. Specifically, Section 14(d)(4) states, in relevant part:

> Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

63. SEC Rule 14d-9(d), adopted to implement Section 14(d)(4) of the Exchange Act, states, in relevant part:

> Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation and the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof[.]

64. In accordance with SEC Rule 14d-9, Item 8 of Schedule 14D-9 requires that a company:

> Furnish such additional material information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading.

65. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Solicitation Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9.

66. Each of the Individual Defendants, by virtue of their positions within the Company as officers and/or directors, were aware of materially false and/or misleading and/or omitted information but failed to disclose such information, in violation of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Solicitation Statement with respect to the Proposed Transaction.

67. Defendants acted knowingly or with deliberate recklessness in filing the materially false and misleading Solicitation Statement which omitted material information.

68. The false and misleading statements and omissions in the Solicitation Statement are material in that a reasonable shareholder would consider them important in deciding whether to tender their shares in connection with the Proposed Transaction.

### COUNT III
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

69. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

70. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions

as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Solicitation Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Solicitation Statement.

71. Each of the Individual Defendants was provided with or had unlimited access to copies of the Solicitation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Solicitation Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

72. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Solicitation Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Solicitation Statement at issue contains the unanimous recommendation of the Individual Defendants to tender their shares pursuant to the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Solicitation Statement.

73. In addition, as the Solicitation Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the

Proposed Transaction. The Solicitation Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

74. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

75. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Sections 14(e), 14(d)(4), and Rule 14d-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and the tender offer in connection with the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to the Company's shareholders;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding Plaintiff rescissory damages;

C. Declaring that Defendants violated Sections 14(e), 14(d)(4), and 20(a) of the Exchange Act, and Rule 14d-9 promulgated thereunder;

D. Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expenses and expert fees; and

E.   Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: May 20, 2020                                      Respectfully submitted,

**HALPER SADEH LLP**

By: /s/ Daniel Sadeh
Daniel Sadeh, Esq.
Zachary Halper, Esq. (to be admitted *pro hac vice*)
375 Park Avenue, Suite 2607
New York, NY 10152
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com
          zhalper@halpersadeh.com

*Counsel for Plaintiff*